789 So.2d 86 (2001)
STATE of Louisiana
v.
Keyon WALKER.
No. 01-KA-51.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2001.
*87 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Rebecca J. Becker, Quentin P. Kelly, Thomas S. Block, Assistant *88 District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, Attorney for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and CLARENCE E. McMANUS.
GOTHARD, Judge.
Defendant, Keyon Walker, and Ronate Walker were charged by bill of information with two counts of armed robbery committed with a gun. La. R.S. 14:64. Subsequently, the state filed written notice of its intention to apply the provisions of LSA-R.S. 14:64.3 in this case. The trial court granted defendant's motion to sever, and defendant was tried separately by a jury of twelve. At the conclusion of trial, the jury returned a verdict of guilty as charged as to both counts. The trial court sentenced defendant to serve ten years at hard labor on each count without benefit of parole, probation or suspension of sentence. In conformity with the provisions of LSA-R.S. 14:64.3, the court added an additional five years to each sentence. The court ordered that the sentences be served consecutively. This appeal followed.

FACTS
On the evening of November 6, 1999, John Comella took his girlfriend, Rhonda Rommero, on a date. He picked her up between 6:00 and 6:30 p.m. in his white Camaro Z-28 convertible. The two first had dinner at Deanie's Restaurant in Bucktown. Then, as planned, they went to the Oasis Motel on the Westbank Expressway in Gretna to rent a room for the night. Comella parked near their room and exited the car. While walking to the room, Comella and Rommero noticed two men sitting on a stairway outside the door. One of the men approached Comella and asked for a light for his cigarette. Comella gave him a light, then the couple went into their room.
Once inside the door, when Comella and Rommero found the light switch did not work, Rommero walked across the room to try to turn on a lamp. The two men from the stairway appeared in the open doorway. Ms. Rommero saw them first, and yelled to Comella. Comella turned to see the two men. One of them, later identified as defendant, pointed a gun at Rommero's head. The other, later identified as Ronate Walker, approached Comella.
One of the men said, "Give me your keys and your wallet." Comella testified that he handed over his keys and his wallet to Ronate Walker, who then went through Comella's pockets. Ronate Walker did not, however, take anything else from Comella. Ms. Rommero testified that defendant kept the gun pointed at her while the other man took her purse.
The men ordered Comella and Rommero to go into the bathroom. The victims complied, closing the bathroom door behind them. After a short while, the couple opened the door and saw the two men were still in the room. Defendant pointed the gun at them and ordered them back into the bathroom. Comella and Rommero remained in the bathroom for a while longer before they walked out and saw the two men were gone. They saw that Comella's car was gone. They went to the motel's office and called police.
Officer Scott Zemlik of the Gretna Police Department testified that he responded to the robbery call at about 9:30 p.m. He obtained descriptions of the perpetrators and Comella's car, and entered the information into the police computer system. Ms. Comella testified that she described the subjects as two black males wearing Starter jackets and hats. They *89 were of slight build, although the jackets made them look larger.
On the night of November 8, 1999, Officer Chris Robert of the New Orleans Police Department responded to a complaint that there were people loitering in the parking lot of a Rally's Restaurant at the corner of Louisiana and Carondelet. The restaurant was across the street from a nightclub. After clearing the parking lot, the officer noticed two black males slumped down in a white Camaro. He ran the car's license number on the police computer, and found it was listed as having been stolen from Jefferson Parish. Robert placed the car's driver, Ronate Walker, and the passenger, Travis Edgar, under arrest.
Travis Edgar testified at trial that on November 8, 1999, Keyon and Ronate Walker picked him up in a white Camaro which he had never before seen them in. Defendant's girlfriend, Tameka Johnson, was also in the car. The group rode to the Rally's Restaurant on Louisiana Avenue. Defendant and Tameka got out of the car to wait in line at Rally's. The police arrived, and placed him and Ronate under arrest for possession of a stolen vehicle.
Detective Terry Usey-Brosette, assigned to the armed robbery investigation, questioned Travis Edgar and learned of defendant's connection to the stolen car. The detective compiled three photographic lineups. She met with Mr. Comella and Ms. Rommero separately on November 9, 1999. She showed them both the three lineups. Ms. Rommero identified defendant from one of the lineups as the man who held the gun to her head. Mr. Comella identified defendant from the same lineup. Comella also identified Ronate Walker from a second lineup. Detective Usey-Brosette testified that Travis Edgar's picture was included in the third lineup, but that neither of the victims was able to make an identification from that array. Both victims identified defendant in court as the gunman.
Defendant offered alibi testimony at trial. Defendant testified that he lives with his fiancee, Tameka, and her five children in the St. Bernard Housing Development. Also living in the apartment are Carolyn Harris and her five children. He stated that he makes his living as a tattoo artist, and that he works at his home. Defendant claimed he spent the morning of November 6, 1999 grocery shopping with Tameka. They returned home and spent several hours cleaning house. At about 3:00 that afternoon, he began doing tattoos. He had a continuous flow of customers until about 3:30 the following morning.
Defendant testified that he got the Camaro on November 7, 1999 from his cousin, Isaac Dorsey. Defendant further stated he was not aware it was stolen. Isaac told him the car belonged to friends of his. Defendant used the car to pick up Ronate and Travis. He claimed he had nothing to do with the armed robbery, and that he had never in his life been to the Westbank. Isaiah Dorsey, defendant's cousin, was a rebuttal witness for the state. He testified that he saw defendant driving the white Camaro in the St. Bernard Project, but does not remember the date. Dorsey stated that defendant drove him to get some medicine. Dorsey testified that he did not take the car, nor did he ever drive it.
Tameka Johnson, Kimberly Johnson (Tameka's sister), Carolyn Harris and Rochelle Baxter (Tameka's cousin) all supported defendant's alibi by testifying that they were at defendant's apartment on November 6, 1999, and that defendant was there administering tattoos to various people from that afternoon until the early morning hours of November 7.
*90 Tameka Johnson testified that on the night of November 8, 1999, she went to the Corner Pocket nightclub (across from Rally's) with defendant, Travis Edgar, and Ronate Walker. They rode in a white Camaro which was in Edgar's possession. She and defendant went inside the club. When she left the club some time later, she saw Ronate and Travis being placed under arrest. She went back into the club and told defendant the car must have been stolen.

ANALYSIS
In his first allegation of error, the defendant alleges that the imposition of a greater sentence under the auspices of La. R.S. 14:64.3 was unconstitutional. He complains that the trial court's imposition of two additional five-year sentences, based on its finding that defendant committed the charged armed robberies with a firearm, violated his constitutional right to due process and subjected him to double jeopardy. Defendant argues that the issue of whether his offenses fell within the provisions of LSA-R.S. 14:64.3 was a factual issue for the jury, and not for the trial judge.
LSA-R.S. 14:64 provides, in pertinent part: "A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." LSA-R.S. 14:64.3 provides:
When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Section shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
Prior to trial, the state filed in the record written notice of its intention to apply the provisions of LSA-R.S. 14:64.3. However, there is no indication in the record that the sentencing statute was mentioned to the jury, or that the court issued jury instructions regarding its application. There was also no mention of the statute in the bill of information. It is further noted that defendant made no request at trial that the jury be instructed as to the provisions of LSA-R.S. 14:64.3.
The Fifth Amendment's due process clause requires that every fact necessary to convict be proved beyond a reasonable doubt. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, not every fact relevant to sentencing is subject to this dictate. In McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the Court upheld the constitutionality of a Pennsylvania statute which required the sentencing judge to impose a five-year minimum sentence where the judge found by a preponderance of the evidence that the defendant "was visibly possessed of a firearm" when committing one of a number of enumerated felonies. Key to the Court's decision was its finding that the Pennsylvania law "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty;" rather, "it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm." McMillan, 477 U.S. at 87-88, 106 S.Ct. at 2417. In rejecting the defendants' contention that a "clear and convincing" or "beyond a reasonable doubt" standard applied, the Court commented, "Sentencing courts necessarily consider *91 the circumstances of an offense in selecting the appropriate punishment, and we have consistently approved sentencing schemes that mandate consideration of facts relating to the crime ... without suggesting that those facts be proved beyond a reasonable doubt...." McMillan, 477 U.S. at 92, 106 S.Ct. at 2419.
The Supreme Court, in the case of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), considered a New Jersey hate crime statute which authorized a judge to increase a defendant's maximum prison sentence if he found by a preponderance of the evidence that in committing the crime the defendant acted with a purpose to intimidate because of the victim's race. The Court concluded that the statute violated the defendant's Fifth Amendment due process rights and Sixth Amendment right to a jury trial. The Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-2363.
The Apprendi Court explained, however, that its holding did not overrule McMillan. "We limit [McMillan's] holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdicta limitation identified in the McMillan opinion itself." 530 U.S. at 487, n. 13, 120 S.Ct. at 2361, n. 13.
Given the Supreme Court's holding in Apprendi, our relevant inquiry is whether La. R.S. 14:64.3 requires a factual determination, and if so, whether that determination increases the sentence beyond the maximum statutory penalty provided by La. R.S. 14:64.
The statute clearly requires a factual determination as to whether the armed robbery was committed using a firearm as opposed to some other dangerous instrumentality. We find noteworthy that both defendant and the jury were put on notice that the state intended to prove the armed robberies were committed with a firearm. The bill of information, which was read to the jury at the commencement of trial, specifically alleges that defendant committed the offenses with a gun. Moreover, the state filed written notice prior to trial, alerting defendant to the fact that it intended to utilize the provisions of LSA-R.S. 14:64.3. The only weapon mentioned by prosecution witnesses was a gun. Therefore, since the jury found defendant guilty as charged on both counts, it can be reasonably inferred that the jury (i.e., the trier of fact) found that the dangerous weapon used in the commission of the armed robberies was a gun.
Although La. R.S. 14:64.3 requires a factual determination, the trial court's imposition of two five-year sentences under LSA-R.S. 14:64.3, to run consecutively to defendant's ten year armed robbery sentences, did not increase the penalty beyond the maximum term of ninety-nine years prescribed by the armed robbery statute. Therefore, under the holding in Apprendi, there was no due process violation in the trial court's application of LSA-R.S. 14:64.3 to the instant case.
Defendant further asserts that the court's imposition of sentence under LSA-R.S. 14:64.3 constituted a double jeopardy violation. The United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." LSA Const. Art. I, § 15. See also, LSA C.Cr.P. art. 591. Double jeopardy principles are inapplicable to sentence enhancement proceedings. State v. Linkletter, 345 So.2d 452 (La.1977), cert. denied, 434 U.S. *92 1016, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978); State v. Jones, 99-972, p. 8 (La.App. 5 Cir. 2/29/00), 757 So.2d 110, 114. This Court has specifically said that "La. R.S. 14:64.3 does not create a new crime, but simply enhances the penalties for violation of La. R.S. 14:64, the armed robbery statute, when the dangerous weapon used to commit the armed robbery is a firearm." State v. Durant, 00-1246, p. 2, fn. 1 (La. App. 5 Cir. 12/27/00), 776 So.2d 1265, 1267. We believe that this statute no more subjects defendant to double jeopardy than would the application of the Habitual Offender Law to enhance a defendant's sentence. Accordingly, we find defendant's allegation to be without merit.
In his second assignment of error, the defendant alleges that the trial court imposed an excessive sentence. Defendant contends the trial court abused its discretion in ordering that his sentences be served consecutively, when the two offenses of which he was convicted were part of the same transaction.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La. 1992); State v. Munoz, 575 So.2d 848, 851 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009. The court reviewing the sentence for excessiveness on appeal must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. The trial judge is afforded wide discretion in determining a sentence and, if the record supports the sentence imposed, the court of appeal will not set it aside for excessiveness. State v. Sanders, 98-855, pp. 4-5 (La.App. 5 Cir. 5/19/99), 734 So.2d 1276, 1278.
LSA-C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all of them be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
The instant offenses were clearly the product of a single course of conduct. There was, therefore, a presumption in favor of concurrent sentences, at least as to the two ten-year terms. The judge was required by LSA-R.S. 14:64.3 to order the two five-year terms to be served consecutively.
The courts have found that, although the law favors concurrent sentences for crimes committed as part of a single transaction, a trial judge retains discretion to impose consecutive penalties on the basis of other factors, such as the offender's past criminal acts, the violent nature of the charged crimes, or the risk he may pose to the general safety of the community. State v. Thomas, 98-1144 (La.10/9/98), 719 So.2d 49; State v. Williams, 98-1146, p. 23 (La. App. 5 Cir. 6/1/99), 738 So.2d 640, 656, writ denied, 99-1984 (La.1/7/00), 752 So.2d 176.
In this case, defendant points out that the trial judge did not give reasons for imposing consecutive sentences. However, we note that when the trial court denied his oral motion to reconsider sentence, *93 defendant informed the court that he would waive reasons for sentencing.
Defendant also argues that the record shows he did not physically harm the victims, and that he has no criminal history. Defendant argues that the trial court did not have sufficient justification for imposing consecutive sentences, particularly since the enhanced sentences of five years on each count were already made consecutive. Although the judge began by imposing the minimum sentence of ten years on each count, in the end, defendant's sentences totaled thirty years.
We find that the record, as a whole, supports defendant's sentences. Of the two men involved in the robbery, defendant was the gunman. He terrorized Ms. Rommero by standing only a few feet away from her and pointing the gun at her head. He and his accomplice took a number of items of value from both victims. We do not find that under these circumstances, the 30 year sentence is excessive. Accordingly, defendant's second allegation of error is without merit.
In his third allegation, defendant assigns as error all errors patent. We have reviewed the record for errors patent, pursuant to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990), and note the following.
The transcript of the sentence hearing reflects that the trial court failed to inform defendant at the time of sentencing of the two-year limitation for filing applications for post-conviction relief, as required by La.C.Cr.P. art. 930.8. Accordingly, we order the trial court to send written notice to defendant of the two-year time limitation, and to file written proof of such notice in the trial court record. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.

CONCLUSION
For the above discussed reasons, the defendant's conviction and sentence are affirmed and the matter is remanded for the trial court to send written notice to defendant of the delays for filing post conviction relief as set forth in La.C.Cr.P. art. 930.8.
AFFIRMED AND REMANDED WITH ORDER.