# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 03-1621


**STATE OF LOUISIANA**

**VERSUS**

**CEDRIC DANIELS**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 60487AM
HONORABLE JOHN C. FORD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Billy Howard Ezell, Judges.

**AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.**


**Hon. William E. Tilley**
**District Attorney -Thirtieth Judicial District Court**
**P.O. Box 1188**
**Leesville, LA 71496-1188**
**(337) 239-2008**
**Counsel for: Plaintiff/Appellee**
**State of Louisiana**

**Dmitrc Ian Burnes**
**Burnes & Burnes**
**711 Washington Street**
**Alexandria, LA 71309-0650**
**(318) 448-0482**
**Counsel for: Defendant/Appellant**
**Cedric Daniels**

**Cedric Daniels**
**Pro Se**
**2294 Slagle Road**
**Leesville, LA 71446**

**EZELL, JUDGE**.

The Defendant, Cedric Daniels, was charged by bill of information on April 23, 2001, with armed robbery, a violation of La.R.S. 14:64. On April 23, 2001, the Defendant was arraigned and entered a plea of not guilty. An amended bill of information charging the Defendant with armed robbery wherein a firearm was used, a violation of La.R.S. 14:64 and La.R.S. 14:64.3, was filed on February 18, 2003. On March 6, 2003, the Defendant was arraigned and entered a plea of not guilty to the amended charge.

On April 14, 2003, a jury was selected to hear this matter. The jury returned a verdict of guilty as charged on April 15, 2003. On September 30, 2003, the Defendant was sentenced to serve ten years at hard labor without benefit of probation, parole, or suspension of sentence, with credit for time served for armed robbery. For use of a firearm during the robbery, the Defendant was sentenced to serve an additional five years at hard labor without benefit of probation, parole, or suspension of sentence to run consecutively to his sentence for armed robbery.

The Defendant filed a motion for appeal on October 7, 2003. The motion was granted on October 9, 2003, and the matter made returnable to this court on December 9, 2003.

**FACTS**

On February 8, 2001, Jason Hendricks had a part-time job as a pizza delivery person for Domino's Pizza. Mr. Hendricks delivered a pizza to 1206 Dogwood Circle at approximately 8:00 p.m. Once the customer paid for the order, Mr. Hendricks returned to his car and placed the pizza warming bag in the back passenger side of his car. Mr. Hendricks then heard someone say "hey, man." Mr. Hendricks turned and saw a black man, fifteen to twenty feet away, walking toward him. The man asked Mr. Hendricks if he worked for Domino's and if he had twenty dollars. Mr.

1

Hendricks indicated that he did not have any money and walked to the back of his car. At that time, the man reached into his pocket, pulled out a gun, and "pulled back on the slide." The man then ordered Mr. Hendricks to give him everything Mr. Hendricks had in his pockets, including his wallet. Mr. Hendricks took twenty-three dollars and placed it on the ground. The man then picked up the money and jogged away.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent as to the sentence imposed pursuant to La.R.S. 14:64.3. Pursuant to La.R.S. 14:64.3, the trial court sentenced the Defendant to five years at hard labor without benefit of probation, parole or suspension of sentence, to be served consecutive to the sentence imposed for armed robbery. When the Defendant committed the present offense, La.R.S. 14:64.3 provided:

> When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Section shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.

This provision does not provide for the sentence imposed to be served at hard labor. Thus, the trial court erred in ordering the additional five-year sentence to be served at hard labor. In *State v. Williams*, 01-1398 (La.App. 1 Cir. 3/28/02), 815 So.2d 378, *writ denied*, 02-1466 (La. 5/9/03), 843 So.2d 388, the first circuit found that even though La.R.S. 14:64.3's failure to provide for imprisonment at hard labor may have been a legislative oversight, any ambiguity must be resolved in favor of the defendant. Accordingly, the court found that a term of imprisonment imposed pursuant to La.R.S. 14:64.3 could not be imposed at hard labor. *See also State v. Hyland*, 36 La.Ann. 709

2

(1884), wherein the court stated "that the word 'imprisonment' alone and unqualified, when used in criminal statutes, does not import imprisonment at hard labour. . . ." *Id.* at 710.

Accordingly, we find the five-year sentence imposed pursuant to La.R.S. 14:64.3 should be amended by deleting the provision requiring the sentence to be served at hard labor. Therefore, we will remand the case and order the trial court to correct the minutes accordingly.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the Defendant contends "the trial court erred in sentencing [him] under LA R.S. 14:64.3 . . . when the jury only returned one verdict but was not given an opportunity to return a separate verdict with respect to LA R.S. 14:64.3." In brief to this court, the Defendant contends the following:

> [T]he trial court instructed the jury concerning armed robbery . . . but did not instruct the jury separately on the elements of the offense under Revised Statute 14:64.3, use of a firearm during an armed robbery. Because the jury was not given separate instructions on what constitute the elements of the use of a firearm and because the jury was not given the opportunity to vote separately on that, only one verdict . . . was returned.
>
> More specifically, in enumerating the elements required to return a verdict of armed robbery, the trial court did <u>not</u> instruct the jury that it must find a firearm was used. The trial court, in listing the elements, only explained to the jury that they must find that "the defendant was armed with a dangerous weapon." When the jury returned it's verdict of "Guilty as Charged", that verdict . . . was to the charge of violation of Louisiana Revised Statute 14:64, armed robbery. There was no separate instructions, findings, or verdict concerning Louisiana Revised Statute 14:64.3 returned by the jury.

The Defendant also contends that an improper set of verdicts and responsive verdicts was presented to the jury.

The State argues that the Defendant did not object to the jury instructions or ask the court to give any additional jury instructions. Additionally, the State contends that La.R.S. 14:64.3 does not establish a new crime and is only a sentencing provision.

3

The transcript of the trial indicates the jury instructions at issue were not recorded by the court reporter at the trial of this matter. However, a copy of jury instructions signed by the trial judge was filed into the record on April 15, 2003, the date the Defendant was found guilty. We will address the Defendant's arguments based on the jury instructions filed in the record.

ELEMENT OF THE OFFENSE/SEPARATE VERDICT

The Defendant contends that use of a firearm is an element of the offense of armed robbery and a separate verdict regarding firearm use should have been presented to the jury. As noted by the Defendant, the authors of the Louisiana Civil Law Treatise, Criminal Jury Instructions, are of the opinion that La.R.S. 14:64.3 is an added element of the offense of armed robbery since it expands the penalty range. CHENEY C. JOSEPH, JR. & P. RAYMOND LAMONICA, 17 Louisiana Civil Law Treatise (2002 Pocket Part) Criminal Jury Instructions § 10.66.1, at 153.

The State contends that La.R.S. 14:64.3 is a sentencing provision. In support of its argument, the State cites *State v. Durant*, 00-1246 (La.App. 5 Cir. 12/27/00), 776 So.2d 1265, *writ denied*, 01-313 (La. 12/14/01), 803 So.2d 985, wherein the fifth circuit stated in footnote number one that "La. R.S. 14:64.3 does not create a new crime, but simply enhances the penalties for a violation of La. R.S. 14:64, the armed robbery statute, when the dangerous weapon used to commit the armed robbery is a firearm." *Id*. at 1267. Additionally, the Defendant points out that in *State v. Morrison*, 01-268 (La.App. 5 Cir. 8/28/01), 795 So.2d 465, *writ denied*, 01-2856 (La. 8/16/02), 822 So.2d 614, the defendant was charged in a bill of information with armed robbery in violation of La.R.S. 14:64. At the beginning of trial, the State filed a notice indicating its intent to "invoke the firearm enhancement of *sentence* provisions of La.R.S. 14:64.3." *Id*. at 466 (emphasis added). The defendant was found guilty as charged and was sentenced to serve ten years at hard labor for armed

4

robbery and an additional five years for the "firearm enhancement," to run consecutively. *Id.* The court noted in its opinion that the defendant was appealing his "conviction of armed robbery, his sentence and enhancement for committing the offense with a firearm." *Id.*

This court finds there is little law regarding La.R.S. 14:64.3. We cannot find any case law other than that suggested by the State that would indicate whether La.R.S. 14:64.3 should be considered an element of the offense of armed robbery or a sentencing provision and whether a separate verdict is required to be rendered under La.R.S. 14:63.4. Accordingly, we will compare La.R.S. 14:63.4 with the version of La.R.S. 14:95.2 that was in effect until 1988.

Louisiana Revised Statutes 14:95.2, which was repealed by 1988 La. Acts No. 319 § 2, required the imposition of an additional penalty for possession of a firearm or explosive device in the commission of certain enumerated felonies. In *State v. Jackson*, 480 So.2d 263 (La.1985), the defendant appealed alleging he did not receive notice that either La.R.S. 14:95.2 or La.Code Crim.P. art. 893.1 would be utilized to enhance his sentence; accordingly, his sentence should not have been enhanced. The bill of information did not charge use of a firearm in the commission of manslaughter and the district attorney, prior to trial or sentencing, did not move the court to enhance the sentence or notify the defendant that either La.R.S. 14:95.2 or La.Code Crim.P. art. 893.1 would be applied. Nonetheless, the trial judge, who was aware of the evidence of firearm use, applied both statutes when sentencing the defendant. The supreme court discussed the differences between La.R.S. 14:95.2 and La.Code Crim.P. art. 893.1 as follows:

> The statutes under consideration are conceptually different. Although § 14:95.2 does not define a fully independent crime, it does define criminal activity, use of a gun attending commission of ten specified felonies, and it does provide for an independent or supplemental penalty. Furthermore, it appears in the Criminal Code

5

(Chapter 1 of Title 14) at Part VI "*Offenses* Affecting the Public Generally," Subpart A "*Offenses* Affecting the Public Safety." It is sufficiently an accusation as to require that the accused "be informed of the nature and cause" thereof (U.S. Const. amend. art. VI and *In re Oliver* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682). The prescribed method in Louisiana for informing an accused of a criminal charge, in this instance § 14:95.2, is inclusion in a bill of information or indictment.

In this case the defendant Jackson was not charged with firearm use, or, more specifically, violation of § 14:95.2. Nor did the jury convict him of same. Accordingly he may not be sentenced to the additional two years at hard labor under the provisions of § 14:95.2. We overrule our earlier decision in *State v. Roussel*, 424 So.2d 226 (La.1983), which held, to the contrary, that an accused need not be charged under § 14:95.2.

. . . .

Art. 893.1, on the other hand, appears in the Louisiana Code of Criminal Procedure within Title XXX, "Sentence," Chapter 2, "Suspended Sentence and Probation." It is a sentencing statute ("Art. 893.1--Use of firearm in commission of a felony; sentencing"). It does not define a crime, and it does not prescribe a penalty. It rather limits a judge's sentencing discretion when felonies (those where "suspension of sentence is not otherwise prohibited") are committed with a firearm, by providing a minimum sentence, and restrictions thereon (without benefit of parole, etc.) within the penalty framework of the statutory crime committed.

It is evident that the Legislature did not perceive art. 893.1 as charging a crime, for it entrusted to "the court" alone the sentencing authority, rather than to the jury or judge, the trier of guilt or innocence, the responsibility for "finding" the firearm use. Because art. 893.1 is only a sentencing statute--and of course a defendant is charged with knowledge of the law--it is not imperative that a defendant be charged with firearm use for him to be exposed to the penalty provided in part by art. 893.1.

For these reasons a defendant need not be charged in a bill of information or indictment with firearm use to trigger art. 893.1's penalty enhancement provisions.

. . . .

An accused is entitled to know in advance of trial by receipt of a written notice from the prosecutor that the state intends to invoke art. 893.1 by calling on the trial judge prior to sentencing to make a finding that a firearm was used in the commission of the charged felony. Absent such pre-trial notice, the penalty enhancement provision contained in art. 893.1 shall not be applied.

6

*Id.* at 268-71 (footnotes omitted).

The court then held that because the bill of information did not charge the defendant with violating La.R.S. 14:95.2, and applying La.Code Crim.P. art. 893.1 unfairly prejudiced the defendant, neither La.R.S. 14:95.2 nor La.Code Crim.P. art. 893.1 could be applied in sentencing the defendant.

We find La.R.S. 14:64.3 is more akin to La.R.S. 14:95.2 in that it does define criminal activity and provide for a supplemental penalty. Accordingly, the State was required to list the provision in the bill of information.

Recently, in *Sattazahn v. Pennsylvania*, 537 U.S. 101,111,123 S.Ct. 732,739 (2003), the United States Supreme Court summarized its holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000) stating, in pertinent part:

> Our decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), clarified what constitutes an "element" of an offense for purposes of the Sixth Amendment's jury-trial guarantee. Put simply, if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that fact--no matter how the State labels it--constitutes an element, and must be found by a jury beyond a reasonable doubt. *Id.,* at 482-484, 490, 120 S.Ct. 2348.

Inasmuch as use of a firearm under La.R.S. 14:64.3 can increase the penalty imposed for armed robbery, use of a firearm, under *Apprendi* and *Jackson*, would be considered an element of the offense that must be proven by the State and a factual determination regarding the issue made by the trier of fact. We find there is nothing that indicates a separate verdict is required before a defendant's sentence can be enhanced under La.R.S. 14:64.3.

The jury instructions found in the record read, in pertinent part:

> The defendant is charged with armed robbery of Jason Hendricks, wherein a firearm was used as the dangerous weapon during the commission of the offense, in violation of R.S. 14:64 and 14:64.3, it being alleged that the offense occurred on or about February 8, 2001.

7

Armed robbery is the taking of anything of value belonging to another from the person of another or which is in the immediate control of another, by use of force or intimidation, while the offender is armed with a dangerous weapon.

Anything of value must be given the broadest possible construction including any conceivable thing of the slightest value.

A dangerous weapon includes any instrumentality which, in the manner used, is calculated or likely to cause death or great bodily harm.

Thus, in order to convict the defendant of armed robbery, you must find:

(1) That the defendant intentionally took something of value belonging to another; and

(2) That the thing of value taken was in the possession or in the immediate control of Jason Hendricks when it was taken; and

(3) That the defendant used force or intimidation against Jason Hendricks in order to accomplish the taking; and

(4) That the defendant was armed with a dangerous weapon.

In *State v. Walker*, 01-51 (La.App. 5 Cir. 5/30/01), 789 So.2d 86, *writ denied*, 01-1922 (La. 5/10/02), 815 So.2d 834, the defendant alleged the issue of whether his offense fell within the provisions of La.R.S. 14:64.3 was a factual determination to be made by the jury and not the trial judge. Prior to trial, the State filed in the record written notice of its intention to utilize La.R.S. 14:64.3. However, there was no mention of the statute in the bill of information and there was no indication in the record that the statute was mentioned to the jury or that the court gave instructions to the jury regarding its application. Additionally, the defendant did not request that the jury be instructed as to the provisions of La.R.S. 14:64.3. The fifth circuit noted the following:

Given the Supreme Court's holding in *Apprendi* [*v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000)], our relevant inquiry is whether La. R.S. 14:64.3 requires a factual determination, and if so, whether that determination increases the sentence beyond the maximum statutory penalty provided by La. R.S. 14:64.

8

The statute clearly requires a factual determination as to whether the armed robbery was committed using a firearm as opposed to some other dangerous instrumentality. We find noteworthy that both defendant and the jury were put on notice that the state intended to prove the armed robberies were committed with a firearm. The bill of information, which was read to the jury at the commencement of trial, specifically alleges that defendant committed the offenses with a gun. Moreover, the state filed written notice prior to trial, alerting defendant to the fact that it intended to utilize the provisions of LSA-R.S. 14:64.3. The only weapon mentioned by prosecution witnesses was a gun. Therefore, since the jury found defendant guilty as charged on both counts, it can be reasonably inferred that the jury (i.e., the trier of fact) found that the dangerous weapon used in the commission of the armed robberies was a gun.

*Id*. at 91.

In the case at bar, La.R.S. 14:64.3 was listed in the bill of information, the jury was instructed that a firearm was used as a dangerous weapon, and the only weapon mentioned at trial was a firearm. Based on the jury instructions in the case at bar, the jury's verdict of "guilty as charged," and the fifth circuit's ruling in *Walker*, we find that the jury could have reasonably inferred that the dangerous weapon used in the armed robbery at issue was a firearm. Accordingly, we find that the jury was not required to render a separate verdict under La.R.S. 14:64.3 and the jury was properly instructed regarding the Defendant's use of a firearm.

VERDICT SHEET AND RESPONSIVE VERDICTS

Louisiana Code of Criminal Procedure Article 814(22) provides the following responsive verdicts for armed robbery:

Guilty.

Guilty of attempted armed robbery.

Guilty of first degree robbery.

Guilty of attempted first degree robbery.

9

Guilty of simple robbery.

Guilty of attempted simple robbery.

Not guilty.

The verdict sheet in the case at bar listed the responsive verdicts as found in La.Code Crim.P. art. 814.

We find there are no proposed responsive verdicts listed in La.Code Crim.P. art. 814 for a violation of La.R.S. 14:64.3. The Defendant contends the court should have used the list of responsive verdicts proposed in the LOUISIANA CIVIL LAW TREATISE, CRIMINAL JURY INSTRUCTIONS, which provides for the following responsive verdicts when a defendant has been charged under both La.R.S. 14:64 and La.R.S. 14:64.3:

Guilty

Guilty of Attempted Armed Robbery Using a Firearm

Guilty of Armed Robbery

Guilty of Attempted Armed Robbery

Guilty of First Degree Robbery

Guilty of Attempted First Degree Robbery

Guilty of Simple Robbery

Guilty of Attempted Simple Robbery

Not Guilty.

JOSEPH, ET AL. at 155.

The jury instructions given in the case at bar indicate the jury was instructed that the Defendant was charged with armed robbery wherein a firearm was used as a dangerous weapon. Accordingly, the jury was instructed that the dangerous weapon used was a firearm. Furthermore, as previously indicated, the only evidence presented to the jury in this case regarding a dangerous weapon was that the Defendant was armed with a gun. We find the responsive verdicts in this case were not incorrect

10

based on the instructions given to the jury and the fact that no testimony regarding any other type of dangerous weapon was presented to the jury.

This assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the Defendant contends the trial court erred in failing to suppress the out of court identifications of the Defendant.

The Defendant filed a motion to suppress identification on June 20, 2001. On March 18, 2003, the Defendant filed a motion to suppress identification, testimony, and evidence. The matters were set for hearing several times, but were eventually referred to the merits. The court notes the victim, Jason Hendricks, identified the Defendant on February 8, 2001, and again on February 9, 2001. Additionally, Mr. Hendricks made an in-court identification of the Defendant at trial. It is the identifications made on February 8, 2001, and February 9, 2001 that are at issue herein. In brief to this court, the Defendant does not set forth any allegations that the in court identification was improper.

On two separate occasions, Jason Hendricks identified the Defendant as the man who robbed him. Jason Hendricks testified that after he was robbed on February 8, 2001, he returned to Domino's Pizza. Officer Chris Wright, who responded to a call reporting the robbery, overheard Mr. Hendricks give a description of the perpetrator as a black male with a thin face, approximately twenty years old, wearing dark colored wind pants and a stocking cap. Approximately thirty minutes after the robbery, Mr. Hendricks testified that Officer Wright presented him with pictures of three black males. Officer Wright showed Mr. Hendricks the photographs and instructed him to look at the photographs and make a decision as to whether he recognized any of the men as the man who robbed him. Mr. Hendricks identified the Defendant as the man who robbed him. On February 9, 2001, Officer Wright gave the

11

photograph of the Defendant to Detective Marvin Hilton with the Vernon Parish Sheriff's Office. Mr. Hendricks went to the Vernon Parish Sheriff's Office on the same day and was shown a photographic lineup consisting of photographs of six men. Mr. Hendricks again identified the Defendant as the man who robbed him.

Prior to the close of trial, defense counsel argued that he had not been allowed to cross examine and confront the evidence put forth to the jury because the photographs presented to Jason Hendricks on February 8, 2001, other than that of the Defendant, were not available at trial. Furthermore, there was no testimony that those photographs matched the description given by Mr. Hendricks. Accordingly, the initial identification of the Defendant was suggestive and any subsequent identification was, therefore, tainted. Additionally, only the photograph of the Defendant in the lineup presented to Mr. Hendricks on February 9, 2001, matched the description given by Mr. Hendricks. The State then presented its argument. In rebuttal, defense counsel argued that the court could not make a ruling as to whether the initial identification was suggestive because all the photographs presented to Mr. Hendricks were not available.

The court then made the following ruling:

> problem I have is categorizing the showing of the photographs at the pizza parlor as a lineup. There is a line of cases where the arresting officers can actually arrest a defendant when he's apprehended in the proximity of the scene of a crime and return in custody to the witness and ask for the witness to identify that person. I can't imagine anything more suggestive than that. But that procedure has been upheld by the Supreme Court. This is a similar circumstance where this defendant was seen in the proximity of the offense before the offense was committed and then exhibited a photograph of the defendant within thirty minutes of the alleged offense and I think that meets the criteria established in that line of cases where they can do that. Now, there were two or three other -- two other photographs exhibited or maybe different views of two other persons, I think that's irrelevant.

12

Defense counsel then argued that Officer Wright conducted a photographic lineup. The judge then denied Defendant's motion to suppress. Defense counsel objected to the trial court's ruling.

In brief to this court, the Defendant contends the photographs shown to Jason Hendricks by Officer Chris Wright on February 8, 2001, were not compiled using the ordinary procedure for photographic lineups. Additionally, because the photographs were not presented by the State at trial, the Defendant was deprived of an opportunity to have the court examine the photographs in order to determine if they were unduly suggestive. The Defendant also argues that having photographs of three individuals is, in and of itself, overly suggestive. The Defendant also contends the photographic lineup conducted at the Vernon Parish Sheriff's Office on February 9, 2001 was tainted by the prior suggestive identification inasmuch as the photograph Mr. Hendricks selected on February 8, 2001, was used in the photographic lineup at the Sheriff's Office.

> The defendant has the burden of proof on a motion to suppress an out-of-court identification. La.Code Crim. Proc. art. 703D. To suppress an identification, the defendant must first prove that the identification procedure was suggestive. *State v. Prudholm*, 446 So.2d 729 (La.1984). An identification procedure is suggestive if, during the procedure, the witness' attention is unduly focused on the defendant. *State v. Robinson*, 386 So.2d 1374, 1377 (La.1980). However, even when suggestiveness of the identification process is proved by the defendant or presumed by the court, the defendant must also show that there was a substantial likelihood of misidentification as a result of the identification procedure. *State v. Prudholm, supra*.

> In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Court held that an identification may be permissible, despite the existence of a suggestive pretrial identification, if there does not exist a "very substantial likelihood of irreparable misidentification." The factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification include (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation;

13

and (5) the time between the crime and the confrontation. *Id*. at 114, 97 S.Ct. 2243.

*State v. Broadway*, 96-2659, p. 14 (La. 10/19/99), 753 So.2d 801, 812, *cert. denied*, 529 U.S. 1056, 120 S.Ct. 1562 (2000).

FEBRUARY 8, 2001

We will first discuss the February 8, 2001 identification. The State admitted at trial that it did not have the two additional photographs shown to Jason Hendricks on February 8, 2001. Accordingly, the photographs were not available for the trial court's consideration. Therefore, for the purposes of this opinion, we will presume the identification procedure used by Officer Wright was suggestive. In addition to proving that the identification procedure was suggestive, the Defendant must also show that there was a substantial likelihood of misidentification as a result of the identification procedure. We will now address the *Manson* factors in order to determine whether, under the totality of the circumstances, the suggestive nature of the photographs presented a substantial likelihood of misidentification.

Opportunity to View the Criminal at the Time of the Offense

Although there was some dispute as to the amount of lighting at the crime scene, Mr. Hendricks testified that he had no problems seeing that night. Mr. Hendricks testified that there was a street light behind him and a light on at the entry to 1206 Dogwood Circle. Mr. Hendricks further testified that the light from 1206 actually illuminated the right front of the Defendant's face and the area where the Defendant reached down to pick up the money was very clear. Hendricks clearly saw the Defendant from the time the Defendant picked up the money until he jogged away, which was approximately forty to sixty seconds.

14

We find that Jason Hendricks had ample opportunity and time to view the Defendant during the robbery and was able to give a description to police thirty minutes after the robbery.

Witness' Degree of Attention

Jason Hendricks testified that upon being employed by Domino's Pizza he was required to watch seven to eight videotapes. In those tapes, Mr. Hendricks was taught to remain calm and focus on the perpetrator's face during a robbery so that he could give a description of the perpetrator to police. Again, Mr. Hendricks testified that his view of the Defendant was not obstructed and the Defendant was six to seven feet away from Mr. Hendricks for approximately forty to sixty seconds.

We find Jason Hendricks' testimony indicated he had specialized training and paid ample attention to the Defendant's appearance at the time of the robbery.

Accuracy of the Witness' Prior Description of the Criminal

Mr. Hendricks testified that he described the perpetrator as a "black male approximately 6 foot tall, maybe he's just slightly taller, around 20 -- about 20 years old, very thin, very thin faced, longer face, with very distinctive facial features" wearing "black nylon wind pants, a dark colored long sleeve sweat shirt or jacket and a navy blue stocking cap." Detective Steven Moss with the Vernon Parish Sheriff's Office testified that Mr. Hendricks described the perpetrator as a black male, twenty to twenty-two years old, thin faced, and wearing black or dark colored wind pants, a dark colored, possibly blue stocking cap, and a dark colored long sleeve shirt.

We note Mr. Hendricks' description of the person who robbed him never changed. Additionally, Detectives Moss and Hilton testified that the description given by Mr. Hendricks matched that of the Defendant. Furthermore, Mr. Hendricks made an in-court identification of the Defendant at trial.

Level of Certainty Demonstrated at the Confrontation

15

Mr. Hendricks testified that he reviewed the photographs shown to him on February 8, 2001, very carefully so as not to falsely accuse anyone. After viewing the photographs, Mr. Hendricks was one-hundred percent positive that the Defendant was the man who robbed him. Officer Wright testified that Mr. Hendricks did not hesitate in selecting the Defendant's photograph.

Time Between the Crime and the Confrontation

Mr. Hendricks gave a description to Officer Wright on February 8, 2001 approximately twenty to thirty minutes after he was robbed. We submit that the amount of time that elapsed between the robbery and the identification of the Defendant was not substantial.

We find the factors set forth in *Manson* are satisfied in this case. Even if the February 8, 2001 identification procedure was suggestive, there was no substantial likelihood of misidentification by Jason Hendricks and the Defendant has not proven that the identification was unreliable. Accordingly, the trial court properly denied the Defendant's motion to suppress the identification made on February 8, 2001.

February 9, 2001

We will now discuss whether the photographic lineup conducted on February 9, 2001, was suggestive. The lineup at issues consisted of six photographs each depicting a black male.

The Defendant contends the lineup conducted on February 9, 2001, was tainted because Detective Hilton used the same photograph of the Defendant that Jason Hendricks had selected the previous night.

In *State v. Neslo*, 433 So.2d 73 (La.1983), only the defendant appeared in both a second photographic lineup and a live lineup. The court noted that "[s]ince only the defendant appeared in both the photographic and the physical lineups, there is the possibility of suggestion; that the witnesses might have remembered the defendant

16

from the photograph and not from the night of the crime." *Id*. at 78. One of the witnesses testified that she had not remembered the defendant from the photographs and the other witness was not sure any of the people in the physical lineup had also been in the photographs. The court held that the identification procedure was not unduly suggestive noting that the persons in the photographic lineup and the physical lineup sufficiently resembled the defendant to properly test the identification.

In *State v. Tate*, 454 So.2d 391 (La.App. 4 Cir. 1984), the defendant argued that the identification procedures were suggestive because only the defendant appeared in both the physical lineup and photographic lineups. The court held that the identification procedure was not suggestive inasmuch as each of the police officers took particular care in selecting photographs or "fill-ins" whose facial features and general physical characteristics resembled that of the defendant and each officer meticulously avoided any actions which could have influenced or even appeared to influence the identification.

In *State v. White*, 446 So.2d 1317 (La.App. 2 Cir.), *writ denied*, 450 So.2d 957 (La.1984), the defendant argued that a live lineup was suggestive because he was the only person exhibited in both it and the photographic lineup. The court held that the live lineup was not suggestive, pointing out that the victim testified that she did not think about the photos at the time she viewed the live lineup and based her identification solely on her memory of the defendant at the time of the crime.

In *State v. Calloway*, 97-796 (La.App. 5 Cir. 8/25/98), 718 So.2d 559, the defendant contended that the identification procedure was suggestive. The defendant argued that the victim chose him from a physical lineup because the victim had previously seen the defendant's photograph in two photographic lineups. The court concluded that the identification procedure was not suggestive noting that the victim did not identify anyone in the two photographic lineups and the record did not support

17

the defendant's argument that the victim recognized the defendant at the physical lineup based on his inclusion in the photographic lineups.

Based on the above cited cases, we conclude that the lineup conducted on February 9, 2001 was not suggestive merely because the lineup contained the photograph of the Defendant that Mr. Hendricks viewed the previous night. Mr. Hendricks testified that it did not matter that the picture of the Defendant was displayed to him on February 8, 2001. He testified that he looked at the face alone when he chose the Defendant from the lineup on February 9, 2001. Additionally, Detective Hilton testified that he did not make any suggestion to Mr. Hendricks and no one prompted Mr. Hendricks to select the photograph of the Defendant.

The trial court properly denied the Defendant's motion to suppress the identification made on February 9, 2001. This assignment lacks merit.


### ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, the Defendant contends the trial court erred during its instructions to the jury by omitting the definitions of attempted first degree robbery and attempted simple robbery.

Again, we note the jury instructions were not recorded by the trial court as required by La.Code Crim.P. art. 843. However, the record does not reveal that defense counsel objected to the instructions before, during, or after the instructions were given and at no time did defense counsel ask the judge to give any additional instructions to the jury. Accordingly, the Defendant is precluded from alleging error in the instructions on appeal. *State v. Sykes*, 03-397, (La.App. 3 Cir. 10/8/03), 857 So.2d 638.

### CONCLUSION

18

The Defendant's conviction is affirmed. However, the sentence imposed pursuant to La.R.S. 14:64.3 should be amended by deleting the provision requiring the sentence to be served at hard labor. The case is remanded and the trial court is instructed to correct the minutes of sentencing accordingly.

**AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.**