980 So.2d 45 (2008)
STATE of Louisiana
v.
Christopher T. FULLER.
No. 07-KA-319.
Court of Appeal of Louisiana, Fifth Circuit.
February 19, 2008.
*47 Paul D. Connick, Jr., District Attorney, Terry Boudreaux (Appellate Counsel), Anne Wallis (Appellate Counsel), Thomas Block (Trial Counsel), Assistant District Attorneys, Twenty-Fourth Judicial District Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee, The State of Louisiana.
Holli A. Herrle-Castillo, Attorney at Law, Louisiana Appellate Project, Marrero, LA, for Defendant/Appellant, Christopher T. Fuller.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
Christopher T. Fuller appeals his conviction of armed robbery with a gun, his adjudication as a second-felony offender, and his sentences of 198 years and five years, both without benefit of parole, probation or suspension of sentence. We affirm.
On June 16, 2005, Fuller was charged by bill of information with one count of violation of La.R.S. 14:64, armed robbery, and one count of violation of La.R.S. 14:95.1, being a felon in possession of a firearm.[1] He entered a plea of not guilty and filed several pretrial motions, including a motion to suppress identification that was denied after a hearing. He proceeded to trial on September 6, 2006, on count one only, and a twelve-member jury unanimously found him guilty as charged.
The defendant was sentenced to 99 years at hard labor without benefit of parole, probation, or suspension of sentence. The trial court also imposed a consecutive five-year sentence under La.R.S. 14:64.3, after finding the robbery was committed with a gun.
The State filed a habitual offender bill of information, alleging the defendant was a fourth-felony offender based on the armed robbery conviction and prior convictions for forgery, robbery, and illegal use of a weapon. After a habitual offender hearing, the trial court adjudicated the defendant a second-felony offender. The court vacated the defendant's original sentence on count one and imposed an enhanced sentence of 198 years without benefit of parole, probation, or suspension of sentence. The court ordered that the enhanced sentence run consecutively to the five-year sentence.
FACTS
On April 25, 2005, Bryon McLeod was working the night shift at Mr. Binky's, an establishment in Kenner that sells sex novelties and movies. According to McLeod, the defendant was in the store at approximately 10:30 p.m. and had twice asked him for change for the upstairs viewing booths. Both times, McLeod gave the defendant change, which was kept in a separate cash drawer located below the cash register, *48 and the defendant went back upstairs. The defendant later returned and asked for a cigarette, which McLeod gave him. The defendant stepped outside for a few minutes and, upon his return, asked for change a third time. When McLeod took the cash drawer from under the counter and placed it on top of the counter, the defendant pulled a gun and ordered McLeod to the ground.
The defendant took money out of the cash drawer that was on the counter, then jumped over the counter, put the gun to McLeod's head, and ordered him to open the cash register. McLeod opened the cash register with a key, and the defendant took money out of the register. The defendant also took McLeod's cell phone and a binder containing approximately 150 DVDs that was at the end of the counter.
After the defendant left, McLeod called 911. Officer Anthony Woodson of the Kenner Police Department responded to the call. He met with McLeod, obtained a description of the perpetrator, and took a statement. The next day, Detective Keith Forsythe met with McLeod as part of a follow-up investigation. McLeod indicated he had received a call on his new cell phone, which had the same number as his stolen phone, from an unknown number asking for "Chris L.A." McLeod provided his cell phone records to the police, which led Detective Forsythe to an address where he interviewed two females who were familiar with "Chris L.A." Both females agreed to give statements at the police department.
On the way to the station, one of the females pointed to the defendant, who was standing near a convenience store, and identified him as "Chris L.A." Another officer exited the vehicle and detained the defendant. A loaded weapon, later identified as the gun used in the robbery, was found in the defendant's front pants pocket. The defendant was advised of his rights and he agreed to give a statement, in which he admitted to committing the robbery.
A few days later, Detective Forsythe prepared a photographic lineup with the defendant's photo and showed it to McLeod, who immediately identified the defendant as the person who robbed him.
The defendant testified at trial and denied committing the robbery. He stated he did not even go into Mr. Binky's on the night of the incident. The defendant explained that the only reason he gave a statement admitting to the robbery was to secure the release of his female friend from custody and to prevent the police from taking her young child from her. He claimed the police told him what to say in his statement.
ASSIGNMENT OF ERROR NUMBER ONE
The defendant argues the evidence is insufficient to support his conviction for armed robbery because the State failed to prove his identity as the perpetrator.[2] Specifically, he contends the State failed to negate the reasonable possibility that the victim, Bryon McLeod, was the actual perpetrator. The defendant asserts that McLeod was the only person who placed him at the scene, and McLeod was the only person who identified him as the robber. He points out that McLeod, an employee of Mr. Binky's, knew that none of the security cameras were operational. In addition, contrary to proper procedure, *49 McLeod failed to lock the doors to the business on the night of the robbery. The defendant also notes that the stolen DVDs were limited to those that were rare and expensive, which he argues is a fact only an employee would know. He further notes that McLeod initially was a suspect in the case.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
"Encompassed in proving the elements of an offense is the necessity of proving the identity of the [d]efendant as the perpetrator." State v. Ingram, 04-551, p. 6 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. "Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof." Id.
"Positive identification by only one witness is sufficient to support a conviction." State v. Weaver, 05-169, p. 11 (La.App. 5 Cir. 11/29/05), 917 So.2d 600, 608, writ denied, XXXX-XXXX (La.12/15/06), 944 So.2d 1277.
The defendant does not argue that the State failed to establish any of the essential statutory elements of his conviction. He contends only that the State failed to prove his identity as the offender beyond a reasonable doubt. Therefore, we need not address the sufficiency of the evidence with respect to the statutory elements of armed robbery. See State v. Joseph, 03-1445, pp. 4-5 (La.App. 5 Cir. 5/26/04), 875 So.2d 1011, 1013.
To prove identification, the State offered the testimony of McLeod and Detective Forsythe. McLeod testified he had three opportunities prior to the robbery to view the perpetrator in the well-lit store. On each of these occasions, the robber stood directly in front of McLeod and a brief conversation took place. McLeod stated the perpetrator did not have anything covering his face and was not wearing sunglasses or a hat. After the robbery, McLeod was able to give a detailed description of the perpetrator and told the investigating officer he got a good look at the robber. Four days later, McLeod was shown a photographic lineup and immediately positively identified the defendant as the perpetrator. He also identified the defendant in court as the person who robbed him.
Detective Forsythe testified that after the defendant confessed to the robbery, he prepared a photographic lineup with the defendant's picture and showed it to McLeod. Detective Forsythe stated that McLeod, without hesitation, identified the defendant as the robber.
The defendant argues the evidence showed it was more likely that McLeod was the actual perpetrator of the robbery. He maintains that McLeod was initially a suspect, and asserts that McLeod was the only person who identified him as the robber.
At trial, Detective Forsythe testified there were some initial reasons to believe that McLeod may have been involved in the robbery. Because of those reasons, he interviewed McLeod to clear up a few questions he had. McLeod explained that Detective Forsythe came to his house with questions and wanted to search his home, to which he consented. McLeod stated he cooperated with the police, a fact corroborated by Detective Forsythe, and even *50 turned over his phone records to the police. Detective Forsythe stated there were several things that led to the defendant becoming a suspect, including the phone records. He further testified that a follow-up investigation was conducted based on the information provided by the defendant.
The defendant testified at trial and attempted to explain why he gave a statement confessing to the robbery. He claimed he confessed to the robbery to protect his friend, Ashley, because he was led to believe the police were going to lock her up, charge her with the armed robbery, and take her child. The defendant said he thought he was being smart by confessing because he thought he could secure Ashley's release and then prove his innocence by the store's video cameras.
The defendant also explained his possession of McLeod's phone by stating he and McLeod had been out together the weekend before the robbery. He claimed McLeod had left his phone in defendant's girlfriend's vehicle. McLeod denied that claim, and even denied knowing the defendant by name. Notably, during his testimony the defendant admitted to at least five prior felony convictions.
The jury heard all the evidence and clearly chose to believe the victim over the defendant. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Cazenave, 00-183, p. 14 (La.App. 5 Cir. 10/31/00), 772 So.2d 854, 860, writ denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1151. It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Bailey, 04-85, p. 5 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Further, as stated above, identification by only one person is sufficient to prove the identity of the perpetrator. Viewing the evidence in a light most favorable to the State, there was sufficient evidence to prove defendant was the perpetrator of the armed robbery. We find no merit to this assignment.
ASSIGNMENT OF ERROR NUMBER TWO
The defendant argues his enhanced 198-year sentence without benefits and his consecutive five-year sentence under La.R.S. 14:64.3 constitute an excessive sentence. He maintains the trial court gave no valid reasons for the enhanced sentence and contends the fact he used a gun in the armed robbery should not be an aggravating factor because it was part of the charged offense. The defendant asserts he is not the most egregious offender as no one was injured in the robbery and there was only one victim with no risk of harm to others.
After the defendant's enhanced sentence was imposed, defense counsel orally objected to the sentence as excessive, without stating grounds upon which the objection was based, and noted his intention to file a motion for an appeal. The defendant did not file a written motion to reconsider sentence.
"Failure to make or file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence for constitutional excessiveness only." State v. Bolden, 04-1000, p. 3 (La.App. 5 Cir. 3/1/05), 901 So.2d 445, 447, writ denied, 05-2030 (La.4/28/06), 927 So.2d 279; La.C.Cr.P. art. 881.1(E).
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit *51 the imposition of excessive punishment. "Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness." State v. Smith, 2001-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. "A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice." State v. Lawson, 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622, citing State v. Lobato, 603 So.2d 739, 751 (La. 1992).
"A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion." Smith, supra. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67, p. 5 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130.
"Three factors are considered in reviewing a trial court's sentencing discretion: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts." State v. Stewart, 03-920, p. 16 (La.App. 5 Cir. 1/27/04), 866 So.2d 1016, 1027-28, writ denied, XXXX-XXXX (La.6/25/04), 876 So.2d 832.
The defendant was sentenced to the maximum sentence permissible as a second-felony habitual offender convicted of armed robbery, 198 years at hard labor without benefit of parole, probation, or suspension of sentence. That is twice the longest sentence provided for a first conviction of armed robbery. La.R.S. 14:64(B) and La.R.S. 15:529.1(A)(1)(a). He was also sentenced to five years under La.R.S. 14:64.3, which mandates the imposition of an additional five-year imprisonment when a firearm is used in the commission of an armed robbery, to be served consecutively to the sentence for the armed robbery conviction. Therefore, the defendant effectively was sentenced to 203 years imprisonment.
Similar sentences have been upheld as constitutional. In State v. Smith, 04-340, pp. 14-15 (La.App. 5 Cir. 10/26/04), 888 So.2d 280, 290-91, this Court upheld the defendant's maximum 198-year sentence for armed robbery as a second felony offender. We stated that armed robbery is a serious offense against the person and noted that the defendant in Smith placed the victim in fear of his life by holding a gun on him and threatening his life. We cited several other cases in which 198-year sentences were determined not to be excessive.
Regarding the additional consecutive five-year sentence, in State v. King, 06-1903 (La.10/16/07), 969 So.2d 1228, the Louisiana Supreme Court recently held that the mandatory consecutive five-year enhancement to habitual offender sentence under La.R.S. 14:64.3 is not illegal, and reinstated the defendant's 203-year sentence as a second-felony offender convicted of armed robbery. The trial court had sentenced the defendant to 198 years for armed robbery after adjudicating him a second-felony offender, and imposed an additional consecutive five-year sentence under La.R.S. 14:64.3. On appeal, the Second Circuit upheld the maximum 198-year sentence, but vacated the additional five-year sentence under La.R.S. 14:64.3 on the basis it was illegal.[3] In upholding the 198-year *52 sentence, the court of appeal noted the defendant's extensive criminal history and that the defendant admitted committing the offense. The supreme court, after explaining that the additional five-year penalty may be imposed upon an habitual offender, ultimately reinstated the additional five-year sentence, resulting in a 203-year sentence.
In the instant case, at the time of the original sentencing, the trial judge noted that the defendant had admitted to six prior felonies, including assault on a police officer. He noted that despite all the prior sentences and chances, the defendant chose to commit yet another offense by robbing someone. The trial judge found the defendant to be lawless and deserving of no mercy. He noted the defendant put a gun to the victim's face and threatened the victim while the victim begged for his life. He commented that "[s]ticking a gun in somebody's face is about as serious as you can get." The trial judge further stated that any sentence less than the imposed maximum would deprecate the seriousness of the offense.
Although the defendant's maximum enhanced sentence is severe, his sentence is commensurate with, rather than grossly out of proportion to, other similarly situated defendants. As noted by the Louisiana Supreme Court, "extended imprisonment is not needless and purposeless, but done to negate the [defendant's] opportunity to commit such crimes in the future." State v. Donahue, 408 So.2d 1262, 1267 (La. 1982). In Donahue, supra, the Louisiana Supreme Court upheld defendant's 198-year sentence for two counts of armed robbery.
Based on the present facts and similar cases in the jurisprudence, the defendant's 203-year sentence is not unconstitutionally excessive. The defendant, who had numerous prior feloniesincluding illegal use of a weapon, assault, and robbery pointed a gun at the victim's head and threatened to kill him. We find no merit to this assignment.
ASSIGNMENT OF ERROR NUMBER THREE
The defendant contends his additional five-year sentence imposed under La.R.S. 14:64.3 violates his due process rights under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). He asserts that the five-year sentence imposed was beyond the statutory maximum for armed robbery and, therefore, the issue of whether a gun was used in the armed robbery should have been submitted for determination by the jury.
Without addressing the Apprendi argument, the State notes there is a split among the circuits on whether the five years under La.R.S. 14:64.3 can be imposed in addition to a maximum habitual offender sentence. Subsequent to the State's filing its brief in this Court, the Louisiana Supreme Court decided State v. King, supra, in which the court settled the split in the circuits by holding that the five-year sentence under La.R.S. 14:64.3 can be imposed upon a defendant adjudicated and sentenced as a multiple offender, even though he received a maximum sentence under the habitual offender law. King, 06-1903 at 8, 969 So.2d 1228, 2007 WL 2994592 at *4. The supreme court did not address the imposition of the additional five-year sentence in the context of Apprendi.
*53 At the sentencing hearing, the trial court noted that the State had filed its notice of intent to invoke the provisions of La.R.S. 14:64.3.[4] The trial court stated that based on the evidence presented at trial, it found a gun was used in the robbery. Accordingly, the trial court imposed an additional five-year sentence. The defendant objected on the basis the enhancement was based on a finding of the trial court as opposed to a finding of the jury.
In Apprendi, supra, the United States Supreme Court held that the constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63. The Supreme Court later clarified that the "relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely v. Washington, 542 U.S. 296, 303-304, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004) (emphasis in the original). The failure to submit a sentencing factor to the jury does not require an automatic reversal but rather subject to a harmless error review. Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 2553, 165 L.Ed.2d 466 (2006).
In the context of Apprendi, this Court has determined that La.R.S. 14:64.3 clearly requires a factual determination as to whether a firearm, as opposed to some other dangerous instrumentality, was used in the armed robbery. State v. Walker, 01-51, p. 9 (La.App. 5 Cir. 5/30/01), 789 So.2d 86, 91, writ denied, 01-1922 (La.5/10/02), 815 So.2d 834. Thus, under Apprendi, this fact must be submitted to the jury and proven beyond a reasonable doubt. Apprendi, 120 S.Ct. at 2362-63.
In Walker, supra, the defendant argued his due process rights were violated when the factual issue of whether the armed robberies were committed with a firearm, for purposes of La.R.S. 14:64.3, was not determined by the jury. This Court concluded that the jury's finding a gun was used in the armed robberies could be inferred from its verdict of guilty as charged. We noted that the reading of the bill of information, which alleged the defendant committed the offenses with a gun, put both the defendant and the jury on notice that the State intended to prove the armed robberies were committed with a firearm. We pointed out that the State filed a written notice prior to trial of its intent to use the provisions of La.R.S. 14:64.3, and that the only weapon mentioned at trial was a gun.
In State v. Daniels, 03-1621 (La.App. 3 Cir. 5/12/04), 873 So.2d 822, writ denied, 04-1802 (La.11/24/04), 888 So.2d 227, the Third Circuit likewise deduced the jury's factual finding that the defendant committed the armed robbery with a gun for purposes of applying the enhanced sentencing provisions of La.R.S. 14:64.3. The defendant argued that a separate verdict regarding the use of a firearm during the armed robbery should have been presented *54 to the jury. In Daniels, La.R.S. 14:64.3 was listed in the bill of information, the jury was instructed that a firearm was used as a dangerous weapon, and the only weapon mentioned at trial was a firearm. Relying on this Court's decision in Walker, the Third Circuit concluded the jury was not required to render a separate verdict under La.R.S. 14:64.3 and determined it could be reasonably inferred by the jury's verdict of "guilty as charged" that the jury found a firearm was used in the armed robbery. Daniels, 03-1621 at 9, 873 So.2d at 829.
Similarly, in the bill of information in this case the State specifically charged the defendant with committing the armed robbery while armed with a gun. The bill of information was read to the jury at the beginning of trial. Thus, the jury was informed the State sought to prove the defendant committed an armed robbery while armed with a gun. When the jury charges were read, the jury was again advised that the defendant was charged with armed robbery "in that he did rob Bryon McLeod while armed with a dangerous weapon, to wit: a gun."
Further, the only evidence of a dangerous weapon presented at trial was that of a gun. McLeod testified the defendant pulled a gun, which he held in his left hand, and pointed the gun to the back of McLeod's head. McLeod identified the gun found on the defendant at the time of his arrest as the one the defendant used during the robbery.
We note that in both Walker and Daniels, the additional five-year sentence under La.R.S. 14:64.3 did not increase the defendant's penalty beyond the maximum statutory sentence for armed robbery. The defendant asserts the Walker court suggested that there may be a due process issue if the five-year penalty resulted in a sentence beyond the statutory maximum of 99 years.
In Walker, this Court specifically stated:
Although La. R.S. 14:64.3 requires a factual determination, the trial court's imposition of two five-year sentences under La.R.S. 14:64.3 . . . did not increase the penalty beyond the maximum term of ninety-nine years prescribed by the armed robbery statute. Therefore, under the holding in Apprendi, there was no due process violation in the trial court's application of La.R.S. 14:64.3 to the instant case.
01-51 at 10, 789 So.2d at 91.
Although the Walker court narrowly stated its holding, the fact that the defendant's five-year enhanced sentence in the present case resulted in a penalty beyond the statutory maximum for armed robbery does not change the analysis or result. As stated above, Apprendi requires that any fact that increases the penalty beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt.
In the present case the jury was advised, both at the reading of the bill of information and during the reading of the jury charges, that the State sought to prove the defendant committed an armed robbery while armed with a gun. The State then presented evidence at trial of a gun. Because the jury was aware the State sought to prove the defendant committed an armed robbery while armed with a gun and the only evidence of a dangerous weapon was of a gun, we deduce that by returning a verdict of "guilty of armed robbery" the jury found the dangerous weapon used in the armed robbery was a gun. Thus, whether a gun was used in the armed robbery, which was used to increase defendant's sentence beyond the maximum statutory penalty provided by La.R.S. 14:64, was a fact presented to and decided *55 by the jury. We conclude that no Apprendi violation occurred.
DECREE
For the foregoing reasons, the conviction and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The State entered a nolle prosequi of count two after the defendant's conviction on count one, armed robbery.
[2] The defendant did not file a motion for post verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. However, that failure does not preclude appellate review of the sufficiency of the evidence. State v. Washington, 421 So.2d 887, 889 (La. 1982); State v. Carey, 04-1073, p. 4 (La.App. 5 Cir. 3/29/05), 901 So.2d 509, 511, n. 4.
[3] The Second Circuit concluded that the enhanced penalty provision of La.R.S. 14:64.3 could not be imposed under the habitual offender provision because the enhanced sentenced replaced the sentence for the underlying offense under both La.R.S. 14:64 and 14:64.3. State v. King, 41,083, p. 13 (La.App. 2 Cir. 6/28/06), 935 So.2d 354, 363, vacated, State v. King, 06-1903 (La.10/16/07), 969 So.2d 1228.
[4] The State alleged the armed robbery had been committed with a gun, but did not cite La.R.S. 14:64.3 in the bill of information. The Louisiana Supreme Court has stated that the firearm enhancement provision of La.R.S. 14:64.3 is properly invoked when the State files a written notice of its intent to utilize La.R.S. 14:64.3, pursuant to La.C.Cr.P. art. 893.1(A). The supreme court disagreed with the third circuit's determination that La.R.S. 14:64.3 must be charged in the bill of information before a trial court can impose an enhanced sentence under that statute. State v. Wilson, 05-1486, p. 1 (La.2/17/06), 921 So.2d 103, 104; State v. Robinson, 06-464, p. 4 (La.App. 5 Cir. 12/12/06), 947 So.2d 783, 785.