FREDERICKA HOMBERG WICKER, Judge.
 

 |2In this criminal matter, George A. Preston appeals his armed robbery conviction, a violation of La.R.S. 14:64, and his 20-year hard labor sentence without statutory benefits. Mr. Preston assigns the following counseled and pro
 
 se
 
 errors: (1) The evidence at trial was insufficient upon which to conclude beyond a reasonable doubt that the perpetrator was armed with a dangerous weapon. (2) The trial judge erred by incorrectly instructing the jury as to two non-responsive verdicts, thereby misleading the jury. (3) Trial counsels were ineffective for failing to object to the erroneous instructions and verdict sheet. (4) Trial counsels were ineffective for failing to file a timely motion for new trial on the basis of the erroneous instructions and verdict sheet. Finding no merit to the assignments, we affirm the conviction and sentence. Furthermore, we have reviewed the record for errors patent and find none.
 
 [1]
 

 |aThe defendant was charged by a two-count bill of information. Count 1 charged him with violating “R.S. 14:64 in that he did rob Dennis Moreau while armed with a dangerous weapon, to wit: a handgun” allegedly occurring on September 14, 2006. Count 2 charged him with violating La. R.S. 14:62, simple burglary, allegedly occurring on October 1, 2006. The defendant was represented by counsels Mark Morgan and Jake Lemmon. A few weeks before trial, following a bench conference, the state severed the charges and informed the court that it would first proceed to trial with Count l.
 
 [2]
 
 On August 14, 2008, after a two-day trial, the jury found the defendant guilty of armed robbery. About a month later, the trial judge conducted a sentencing hearing. He sentenced the defendant to 20 years at hard labor without the benefit of parole, probation, or suspension of sentence. The trial judge ordered the sentence to run consecutively with any other sentences that the defendant might be serving.
 
 [3]
 
 The defendant now appeals.
 

 Facts
 

 On September 14, 2006, Dennis Moreau, the general manager of the McDonald’s Restaurant located at 2126 Airline Dr. in Kenner, Louisiana, made a 911 call
 
 [4]
 
 to the
 
 *1055
 
 Kenner police reporting that he was robbed of the restaurant’s bank deposit at gunpoint. The Kenner 911 call station received the call at 3:54 PM. Mr. Moreau said that the perpetrator pulled a gun on him, took the deposit (which was |4in a McDonald’s bag),
 
 [5]
 
 and ran down the street after the robbery. Stating that he was unfamiliar with guns, he described the weapon as a chrome-colored gun, “kind of small,” “like maybe a 9mm.” He said that before the robbery, he saw the perpetrator in the restaurant speaking to one of Mr. Moreau’s employees. And, he would recognize the perpetrator if he saw him again. He gave a description to the operator. Mr. Moreau testified at trial that he was “really frantic” at the time and the description he gave then might not be “perfect.” He testified that he could not vouch for the accuracy of the police report’s statement of the description he gave to the police. However, he was one hundred percent certain of his testimony in court regarding his identification of the defendant as the robber.
 

 Detective Brian McGregor, a 14-year veteran of the Kenner Police Department, testified that he was an investigator for the department at the time of the incident. He responded within 10 to 15 minutes to the dispatched radio call. The call alerted to an armed robbery involving a gun at the restaurant. Several officers were at the scene when he arrived. Detective McGre-gor spoke with Mr. Moreau. Detective McGregor related Mr. Moreau’s account of the incident, which was similar to Mr. Moreau’s description at trial.
 

 Mr. Moreau testified that on the day of the robbery, he worked a 7:00 AM to 4:00 PM shift. Around 1:00 PM, he noticed the defendant speaking to two employees. Mr. Moreau returned to his office and then walked around the restaurant to make certain there was no problem. He spotted the defendant walking with an employee to the bathroom. He thought they were “goofing off” so he followed them. His employee returned to work as instructed and the defendant sat at a table. A few minutes later, a disturbance occurred. The defendant was talking loudly to the employees and yelling. Around 2:30 PM or 2:45 PM, Mr, |5Moreau told the defendant to order food or leave the restaurant. The defendant made “smart comments” under his breath and walked out of the restaurant.
 

 Mr. Moreau went to his office. Among other things, he counted money and prepared bank deposits. Shortly before 4:00 PM, about 3:45 PM, Mr. Moreau walked out the service and employee door — the back door — to his car that was parked in the back parking lot. That door could only be opened from the inside. Mr. Moreau recalled the events that followed “perfectly.” He stated that he unlocked his car door, sat inside, and closed the door. He delayed starting the car while retrieving change from his pocket. A few seconds later, the defendant opened the car door. Mr. Moreau recalled that he had asked the defendant to leave the restaurant. Hence, when the defendant first opened the door, Mr. Moreau thought it was a “joke.” Mr. Moreau focused on the defendant’s face and did not see a gun at first. He was puzzled by the defendant’s actions. He thought the defendant was angry at Mr. Moreau for “kicking him out of the restaurant.” The defendant yelled at Mr. Mor-eau and then Mr. Moreau saw the gun. At the time he saw the gun, the defendant told Mr. Moreau to give him the money. Mr. Moreau felt “paralyzed” at being held up at gunpoint. He gave the defendant
 
 *1056
 
 the money that was in a McDonald’s bag and the defendant ran down the street with the bag.
 
 [6]
 
 Mr. Moreau ran into the restaurant and called the police. The amount of money that was taken totaled $3700 to $4000 for two deposits.
 

 At trial, Mr. Morrow described the gun as a small kind of silver handgun. When the prosecutor asked if there was any possible mistake that the thing that was in the defendant’s hand was a gun, he replied “absolutely not.”
 

 Mr. Moreau testified that he knew the person who had robbed him because he had seen the perpetrator earlier in the restaurant that day and the perpetrator did | finot wear a mask. He had absolutely no doubt that the defendant was the person who robbed him. Mr. Moreau testified that the defendant had a tattoo on his “eye” that was very easily seen.
 
 [7]
 

 Mr. Moreau stated: “I will never forget his face and I knew at that instant that he put that gun in my face, when he opened the car door I knew exactly who he was the second it happened and there is no question in my mind, it is one hundred percent.” He identified the defendant in court as the person who robbed him that day. Mr. Moreau testified that he did not see anyone other than the defendant in the parking lot at the time he was robbed, nor was there anyone running with the defendant when he fled the scene after the robbery.
 

 Sergeant Marc Ortiz, a 16-year veteran with the Kenner Police Department, arrived at the scene shortly after the robbery. Sergeant Ortiz, an expert in the field of computer forensic and data recovery, testified that in September 2006, he was the department’s computer forensics examiner. He retrieved digital video surveillance footage from the restaurant’s surveillance equipment. Mr. Moreau indicated the pertinent time frame. There was no video surveillance of the robbery outside the restaurant. Sergeant Ortiz copied scenes of an individual who was inside the business prior to the robbery. The state introduced those digital video scenes. That digital video was displayed to the jury.
 

 Sergeant Ortiz pointed out Mr. Moreau, an employee, and the perpetrator — later identified as the defendant. Sergeant Ortiz explained that Mr. Moreau identified those parties. Still shots of the defendant were also taken from this video and introduced into evidence.
 

 Detective McGregor testified that he later developed a suspect. On October 12, 2006, he compiled a six-person photographic lineup including the suspect and |7other individuals with similar characteristics. Detective McGregor stated that he did not present the lineup to Mr. Moreau in a suggestive manner. He noted that a computer technique removed the tattoo on the defendant’s face so that all photographs had no tattoo. Detective McGregor and Mr. Moreau testified that Mr. Moreau identified the defendant.
 

 Thereafter, Detective McGregor obtained an arrest warrant. The police department placed details of the robbery along with the defendant’s picture and the fact that he was wanted for the offense of armed robbery in the Times Picayune newspaper.
 

 Detective McGregor stated that Orleans Parish police arrested the defendant as a fugitive at the Greyhound bus station in New Orleans as he attempted to flee to
 
 *1057
 
 Atlanta, Georgia. At the time of his arrest the police seized two bandannas and the newspaper article that were in the defendant’s possession. Detective McGregor interviewed the defendant after the defendant was transported to Kenner.
 

 Detective McGregor testified that after being advised of his rights and waiving them, the defendant admitted that he was the individual depicted in the surveillance photographs. He also admitted that he was asked to leave the restaurant after being involved in a verbal altercation with the manager. However, the defendant denied robbing the manager and having a gun in his possession. The defendant acknowledged that he learned he was wanted for the armed robbery and he was attempting to leave the area.
 

 According to Detective McGregor, the defendant maintained that he was alone when he entered and left the restaurant. However, the defendant testified at trial that he was with a friend at the time.
 

 The defendant testified that he was 19 years of age at the time of trial — August 2008. The defendant admitted that he was at the restaurant on the date of |sthe robbery. Elaine Webb, a McDonald’s employee, also testified that she saw the defendant inside the restaurant that afternoon.
 

 The defendant testified that he lived nearby and often went there. He stated that the video showed him embracing one of the employees. On the date of the incident, he was at the restaurant with a friend. He waited for his friend to order food. He also went to the restroom. After he returned, he sat at a table while his friend got the order. Although he stated that he was not talking to anyone, the manager, however, said that the defendant was creating a disturbance. The manager told him that if he did not order anything, he needed to leave. According to the defendant, he responded by telling the manager that he was not ordering anything but he was with someone who was ordering something. The manager reiterated that if he did not order anything he had to leave. The manager told the defendant that if he did not leave the business, the manager would call the police. The defendant said that after waiting a few seconds for his friend to return, he and his friend went home.
 

 The defendant stated that he heard in the neighborhood about the crime. He returned to the restaurant twice after the robbery. He did so because he had nothing to do with the robbery. He denied ever possessing a firearm. He denied ever putting a firearm in someone’s face and demanding money.
 

 The defendant explained that at his arrest, which was a month after the crime, he was attempting to go to his mother’s home in Atlanta. He was afraid because he was wanted for a crime that he did not commit. His mother told him to come to Atlanta. He had the newspaper clipping in his pocket because it referred to him as the robber. He also had bandannas on his person. However, he did not have money or a weapon in his possession.
 

 |9He stated that he told the officers he did not commit the robbery and he was not going to take an armed robbery charge because he did not commit the crime.
 

 Detective McGregor testified that the restaurant’s , bags,
 
 [8]
 
 money, and deposit slips were never recovered.
 

 Sufficiency
 

 The defendant maintained his innocence at trial. On appeal, the defendant contends, by assignment of error number
 
 *1058
 
 two, that there was insufficient evidence to support his conviction of armed robbery. The defendant’s argument is focused on the question of whether the state proved the perpetrator was armed with a dangerous weapon. He argues that this case more closely resembles a first degree robbery in that the victim merely believed that the perpetrator was armed with a dangerous weapon.
 
 [9]
 
 Although submitted as the defendant’s second assignment of error, it is appropriate to address the claim of insufficiency first, in the event that the defendant may be entitled to acquittal rendering other trial error issues moot.
 
 See: State v. Hearold,
 
 603 So.2d 731, 734 (La.1992).
 

 La.R.S. 14:64(A) provides: “Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.” A “dangerous weapon” “includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” La.R.S. 14:2(3). A gun used in connection with, and at the scene of a robbery, is as a matter of law a “dangerous weapon.”
 
 State v. Refuge,
 
 300 So.2d 489, 491-92 (La.1974).
 

 [ ipThe defendant argues that Mr. Mor-eau admitted that when confronted by the perpetrator he thought it was a joke and he did not initially see a gun. Then, Mr. Moreau did not provide a sufficient description of the gun. Additionally, the defendant argues that at no time did the perpetrator verbally refer to the gun, or firearm, or any weapon of any sort during the incident. Thus, the perpetrator made no threat suggesting that he was armed. And, no weapon was recovered or detected on the surveillance video. The defendant argues that Mr. Moreau could only offer his belief that the perpetrator was armed with a gun.
 

 The state did not introduce a weapon at trial. The production of a weapon, however, is not necessary in an armed robbery prosecution where the state’s witnesses can establish, through their observations at the crime scene, all the elements of the charge beyond a reasonable doubt, including the existence and use of a dangerous weapon.
 
 State v. Cotton,
 
 94-384, p. 2-3 (La.App. 5 Cir. 11/16/94), 646 So.2d 1144, 1146 (citation omitted).
 

 Mr. Moreau testified that he got a good look at the gun that was in the defendant’s hand at the time of the robbery. He said the defendant “put that gun in my face.” He described the gun as a small silver handgun. Despite his unfamiliarity with guns, Mr. Moreau was absolutely positive that the defendant had a gun in his hand.
 

 On the other hand, the defendant denied robbing Mr. Moreau. Faced with conflicting testimony, the jury evidently attached greater weight to Mr. Moreau’s version. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence.
 
 State v. Marcantel,
 
 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 56 (citing
 
 State v. Rosiere,
 
 488 So.2d 965, 968 (La.1986)).
 

 When reviewing the sufficiency of the evidence to support a conviction, this Court is controlled by the standard set forth by the United States Supreme Court in |
 
 ^Jackson v. Virginia,
 
 443 U.S. 307, 99
 
 *1059
 
 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which dictates that to affirm a conviction “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 
 State v. Higgins,
 
 03-1980, p. 6 (La.4/1/05), 898 So.2d 1219, 1226,
 
 cert. denied, Higgins v. Louisiana,
 
 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005) (quoting
 
 State v. Captville,
 
 448 So.2d 676, 678 (La.1984)). Moreover, in the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion.
 
 Id.,
 
 citing
 
 State v. Robinson,
 
 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79,
 
 cert. denied, Robinson v. Louisiana,
 
 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004);
 
 State v. Jones,
 
 97-2591, p. 7 (La.App. 4 Cir. 9/8/99), 744 So.2d 165, 169,
 
 writ denied,
 
 99-3141 (La.4/7/00), 759 So.2d 91.
 

 The jury could have reasonably inferred that since the defendant left the restaurant about one hour before the robbery, he had time to arm himself with a weapon. Also, the jury could have reasonably inferred that the defendant had time to discard the weapon after the robbery.
 

 Although Mr. Moreau originally thought that the defendant was joking and that the encounter was related to the prior incident in the restaurant, he quickly realized the defendant’s intent when the defendant pointed a gun in his face and yelled at him demanding money. Therefore, the jury could have reasonably concluded that the victim did not merely believe the defendant was armed with a dangerous weapon.
 

 Given the above evidence, viewed in the light most favorable to the prosecution, a rational juror could have accepted Mr. Moreau’s testimony as 112credible and concluded beyond a reasonable doubt that the defendant robbed Mr. Moreau while armed with a dangerous weapon. Furthermore, a rational juror could have concluded beyond a reasonable doubt that the defendant committed the “taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon”— the essential elements of armed robbery. La.R.S. 14:64(A). Hence, this assignment lacks merit.
 

 Responsive Verdicts
 

 The defendant asserts that he was charged with armed robbery and the trial judge improperly charged the jury to consider two non-responsive verdicts — armed robbery using a firearm and attempted armed robbery using a firearm.
 

 The bill of information charged the defendant with violating “R.S. 14:64 in that he did rob Dennis Moreau while armed with a dangerous weapon, to wit: a handgun.” La.R.S. 14:64.3(A)
 
 [10]
 
 provides an additional penalty when the dangerous weapon used in the commission of the crime of armed robbery or attempted armed robbery is a firearm:
 

 When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence
 
 *1060
 
 imposed under the provisions of R.S. 14:64.
 

 “The potential additional five-year sentence addresses the separate and distinct behavior of using a firearm as opposed to using some other dangerous weapon (for example, a knife).”
 
 State v. King,
 
 06-1903, p. 7 (La.10/16/07), 969 So.2d 1228, 1232.
 

 | |SHere, although the firearm allegation was contained in the bill, the statutory designation, R.S. 14:64.3, was not. And, the state filed no notice of its intent to seek the firearm statute’s additional sentence. The jury charges, however, contain the firearm allegation.
 
 [11]
 

 The trial judge charged the jury stating that the defendant was charged with one count of violating La.R.S. 14:64 in that he did commit an armed robbery using a firearm against Dennis Moreau. He defined “dangerous weapon.”
 
 [12]
 
 He also defined “firearm” as: “A firearm is an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploding within it. A firearm is a small arms weapon from which a projectile is fired by gun powder.”
 

 The verdict sheet that the trial judge gave to the jury stated that the responsive verdicts were: guilty of armed robbery using a firearm, guilty of attempted armed robbery using a firearm, guilty of armed robbery, guilty of attempted armed robbery, guilty of first degree robbery, guilty of attempted first degree robbery, guilty of simple robbery, guilty of attempted simple robbery, and not guilty. The jury rendered the third listed verdict.
 
 [13]
 

 The defendant contends that the alleged “firearm” non-responsive verdicts misled the jury and violated his right to due process. He speculates that since the jury returned a verdict of armed robbery — a lesser charge in the listed' verdicts — the jury was attempting to show mercy to the youthful defendant. According to the defendant, but for the erroneous inclusion of improper verdicts, the jury could have exercised mei'cy by rendering a verdict of guilty of first degree robbery.
 

 114The state responds that the jury was properly charged because, under
 
 Appren-di,
 

 [14]
 

 La.R.S. 14:64.3 requires a factual determination on the part of the jury when the finding would increase the sentence beyond the statutory maximum. On the other hand, the defendant argues that “using a firearm” is not an element of the offense and the only authorized responsive verdicts would be those mandated by statute with regard to armed robbery.
 

 Here, the defendant’s trial counsels did not object to the responsive verdicts, which treated as greater offenses armed robbery using a firearm, and attempted armed robbery using a firearm. Recognizing the general rule that the failure to object precludes a defendant from raising the issue on appeal,
 
 [15]
 
 the defendant argues that this
 
 *1061
 
 Court should recognize the error as error patent or as a due process violation.
 
 [16]
 
 If not, then the defendant also argues that his counsels were ineffective for failing to object to the alleged error at trial or in a timely motion for new trial.
 

 The Apprendi Rule
 

 The defendant contends that the trial judge used “inventive charging.” However, the charges that were approved by the parties at trial were obviously based on an interpretation of
 
 Jones v. United States,
 
 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999),
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and the
 
 Apprendi
 
 progeny.
 

 | lfi“[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime
 
 must be charged in an indictment,
 
 submitted to a jury, and proven beyond a reasonable doubt.”
 
 Jones, supra,
 
 119 S.Ct. at 1224, n. 6 (emphasis added).
 

 In
 
 Apprendi,
 
 the Court established the rule that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 120 S.Ct. at 2362-63.
 

 The fact that a court labels the firearm statute, R.S. 14:64.3, a “sentence enhancement” rather than a separate criminal act is irrelevant for constitutional purposes.
 
 U.S. v. Booker,
 
 543 U.S. 220, 125 S.Ct. 738, 748-49, 160 L.Ed.2d 621 (2005).
 

 Booker
 
 explained:
 

 If a State makes an increase in a defendant’s authorized punishment contingent on the finding of a fact, that fact-no matter how the State labels it-must be found by a jury beyond a reasonable doubt.
 
 [Ring v. Arizona,
 
 536 U.S. 584, 602, 122 S.Ct. 2428, 2428, 153 L.Ed.2d 556 (2002) ]. Our opinion made it clear that ultimately, while the procedural error in Ring’s case might have been harmless because the necessary finding was implicit in the jury’s guilty verdict,
 
 id.,
 
 at 609, n. 7, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556, the characterization of a fact or circumstance as an “element” or a “sentencing factor” is not determinative of the question “who decides, judge or jury,”
 
 id.,
 
 at 605, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556.
 

 125 S.Ct. at 749 (internal quotations partially omitted).
 

 In
 
 Washington v. Recuenco,
 
 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), the Court recognized
 
 Blakely v. Washington,
 
 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) clarified that the
 
 *1062
 
 “statutory maximum” for
 
 Apprendi
 
 purposes is the maximum sentence a judge may impose
 
 solely on the basis of the
 
 11
 
 (facts reflected in the jury verdict or admitted by the defendant.
 
 124 S.Ct. at 2549 (internal quotations partially omitted) (emphasis in original).
 
 [17]
 

 In
 
 State v. Fuller,
 
 07-319, pp. 9-10 (La. App. 5 Cir. 2/19/08), 980 So.2d 45, 58,
 
 writ denied,
 
 08-0705 (La.10/10/08), 993 So.2d 1282, in the context of
 
 Apprendi,
 
 this Court determined that La.R.S. 14:64.3 clearly requires a factual determination as to whether a firearm, as opposed to some other dangerous instrumentality, was used in the armed robbery.
 
 Fuller,
 
 07-319 at 13, 980 So.2d at 53 (citation omitted). Thus, under
 
 Apprendi,
 
 this fact must be submitted to the jury and proven beyond a reasonable doubt.
 
 Id.
 
 A trial court cannot, on its own, impose the additional penalty provided in La.R.S. 14:64.3.
 
 State v. Robinson,
 
 06-464, p. 4 (La.App. 5 Cir. 12/12/06), 947 So.2d 783, 785.
 

 Cheney C. Joseph, Jr. and P. Raymond Lamonica, the authors of the Louisiana Civil Law Treatise, Criminal Jury Instructions, relying on
 
 Jones
 
 and
 
 Apprendi,
 
 are of the opinion that La.R.S. 14:64.3 is an added element
 
 of
 
 the
 
 offense of
 
 armed robbery since it expands the penalty range. Cheney C. Joseph, Jr.
 
 &
 
 P. Raymond Lamonica, 17 Louisiana Civil Law Treatise (2009-2010 update) Criminal Jury Instructions § 10.64. They propose the responsive verdicts that were used in this case.
 
 [18]
 
 It is apparent that the parties adopted that proposal.
 

 We need not determine, however, whether the state actually charged R.S. 14:64.3, whether the state was required to do so in this instance, and whether the firearm responsive verdicts were improper. In any case, the defendant suffered no prejudice.
 

 ^¡Prejudice/Due Process
 

 In order that a conviction be reversed, the defendant must demonstrate that the inclusion or exclusion of a responsive verdict was prejudicial and that fundamental due process has been violated.
 
 State v. Serio,
 
 94-131, p. 5 (La.App. 5 Cir. 6/30/94), 641 So.2d 604, 607-608,
 
 writ denied,
 
 94-2025 (La.12/16/94), 648 So.2d 388. In
 
 State v. Prestridge,
 
 399 So.2d 564, 578 (La.1981), the Court held that the arguably erroneous inclusion of lesser offense responsive verdicts in the charge to the jury could not be said to have prejudiced the defendant where the jury returned a verdict of guilty of the offense charged.
 

 An invalid instruction on the elements of an offense is harmless if the evidence is otherwise sufficient to support the jury’s verdict and the jury would have reached the same result if it had never heard the charge.
 
 State v. Howard,
 
 98-0064, pp. 18-19 (La.4/23/99), 751 So.2d 783, 805,
 
 cert. denied, Howard v. Louisiana,
 
 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999)
 
 (citing Pope v. Illinois,
 
 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987)).
 

 Procedural bars aside, the pertinent question is thus whether the jury based its verdict in this case on the alleged instructional error.
 
 Id., citing Sullivan v. Loui
 
 
 *1063
 

 siana,
 
 508 U.S. 275, 279, 113 S.Ct. 2078, 2078, 124 L.Ed.2d 182 (1993). The determination is based upon whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
 
 State v. Hongo,
 
 96-2060 (La.12/2/97), 706 So.2d 419, 421.
 

 Even assuming that the jury was improperly charged, there was no prejudice or there was no reasonable probability that but for counsels’ alleged unprofessional errors, the result of the proceeding would have been different. As previously discussed, it is clear from the testimony at trial that the evidence was sufficient to prove beyond a reasonable doubt that the defendant robbed the victim while armed 118with a dangerous weapon. The jury did not return a verdict of guilty under the firearm statute but returned a verdict of guilty of the less severely punishable crime of armed robbery, thereby eliminating any prejudice of the inclusion of the firearm statute in the jury charges. The jury was correctly instructed on the definition of the crime of armed robbery. Even with the alleged incorrect inclusion of non-responsive verdicts, the jury was correctly instructed by the definition of the crime and the jury could not have convicted the defendant on an improper element. Thus, the guilty verdict actually rendered in this trial was surely unattributable to the alleged error. Consequently, because the defendant suffered no prejudice from his counsels’ handling of the responsive verdicts, the ineffective assistance claim is without merit.
 
 [19]
 

 Accordingly, the assignments concerning the alleged improper responsive verdicts lack merit.
 

 Conclusion
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The record was reviewed for errors patent, according to La. C. Cr. P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 [2]
 

 . Ultimately, Count 2 was set for a later trial date.
 

 [3]
 

 . After pronouncing sentence, but before the trial judge advised the defendant of the time delays for seeking an appeal and post-conviction relief, defense counsel Mark Morgan interrupted the trial court by stating that he would like to move for a new trial. The trial judge said that he would like to finish his statements and counsel apologized for the interruption. Thereafter, defense counsel orally moved for a new trial on the ground that the jury was allegedly given improper responsive verdicts that were not sanctioned by the Louisiana Code of Criminal Procedure. Mr. Morgan stated his belief that the verdict in this case was a compromise verdict. The trial judge asked Mr. Morgan if he planned to file a written motion and set that for a hearing date. Counsel replied affirmatively. The trial court stated that he expected a written motion and memorandum no later than the following week with the hearing set for November 6, 2009. The record does not reflect that any motion for new trial was filed in this matter.
 

 [4]
 

 .The parties stipulated that there was no need to have a technician authenticate the 911 tape. Thereafter, the state introduced the recording made by Kenner police technician Michael Segura. The 911 tape was played for the jury.
 

 [5]
 

 . Although Detective Brian McGregor referred to two bags, Mr. Moreau referred to one bag. It is undisputed, however, that the robber stole the bank deposits for that day.
 

 [6]
 

 . See,
 
 supra,
 
 n. 5.
 

 [7]
 

 . The defendant later testified that he had a tattoo on the right side of his face and that he also has other tattoos on his body.
 

 [8]
 

 . See,
 
 supra,
 
 n. 5.
 

 [9]
 

 . "First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.” La.R.S. 14:64.1(A).
 

 [10]
 

 . Effective August 15, 2006, the statute was amended to provide for confinement at hard labor. The "hard labor” amendment was the statute in effect at the time of the alleged offense on September 14, 2006.
 

 [11]
 

 . The trial judge ordered that the jury charges be placed in the record.
 

 [12]
 

 .
 
 Sea,
 
 La.R.S. 14:2(A)(3).
 

 [13]
 

 . In contrast, the responsive verdicts for armed robbery are: guilty, guilty of attempted armed robbery, guilty of first degree robbery, guilty of attempted first degree robbery, guilty of simple robbery, guilty of attempted simple robbery, and not guilty. La.C.Cr.P. art. 814(A)(22).
 

 [14]
 

 .
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
 

 [15]
 

 . La.C.Cr.P. art. 801(C) provides:
 

 A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of the objection. The court shall
 
 *1061
 
 give the party an opportunity to make the objection out of the presence of the jury.
 

 See also Article 841(A): "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.”
 

 [16]
 

 . In
 
 State v. Howard,
 
 98-0064, pp. 18-19 (La.4/23/99), 751 So.2d 783, 804,
 
 cert. denied, Howard v. Louisiana,
 
 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999), the Court explained that by definition, any error which does not constitute a structural defect in the proceedings is subject to harmless-error analysis and also subject to the contemporaneous objection rule. The Louisiana Supreme Court has held that the issue of improper responsive verdicts must be raised by contemporaneous objection, and is not a patent error reviewable on the face of the pleadings.
 
 State v. Serio,
 
 94-131, p. 4 (La.App. 5 Cir. 7/1/94), 641 So.2d 604, 607,
 
 writ denied,
 
 94-2025 (La. 12/16/94), 648 So.2d 388 (citations omitted).
 

 [17]
 

 . The failure to submit a sentencing factor, such as a firearm enhancement, to the jury does not require an automatic reversal but is instead subject to a harmless error review.
 
 Washington v. Recuenco,
 
 548 U.S. 212, 126 S.Ct. 2546, 2553, 165 L.Ed.2d 466 (2006).
 

 [18]
 

 . La.C.Cr.P. art. 814 does not list responsive verdicts for La.R.S. 14:64.3. "In all cases not provided for in Article 814, the following verdicts are responsive: (1) guilty; (2) guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or (3) not guilty.” La.C.Cr.P. art. 815.
 

 [19]
 

 . Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 2071, 80 L.Ed.2d 674 (1984). Here, the defendant has made no showing that the justice of his trial was rendered unreliable by a breakdown in the adversary process caused by deficiencies in counsels’ assistance. His trial was not fundamentally unfair.